IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LISA CRESS, on behalf of herself, and as GUARDIAN FOR MINOR K.C. and as GUARDIAN FOR MINOR C.C., and DANIEL LOMBARDI, Plaintiffs/Counter-Defendants, v. VENTNOR CITY, THEODORE BERGMAN, DOUGLAS BIAGI, MICHAEL MILLER, SCHALLUS, JOHN DOE #1-10(MASKED MEN IN BLACK), JAMES DONALDSON, JOSEPH BONSALL, JAY WOODS, JASON RZEMYK, DAVE DRUDING, STEVEN SWANKOSKI, and TIM COLELLA, Defendants/Cross-Claimants/Cross-Defendants. | CIVIL NO. 08-1873(NLH)(AMD)  **OPINION** |

**APPEARANCES:**

COURTNEY ERIN BLACK
JENNIFER ANN BONJEAN
BONJEAN LAW GROUP PLLC
142 Joralemon Street, 5A
BROOKLYN, NY 11201

   On behalf of plaintiffs

THOMAS B. REYNOLDS
STEVEN HORN
REYNOLDS & DRAKE
29 NORTH SHORE ROAD
ABSECON, NJ 08201

   On behalf of Ventnor City, Theodore Bergman, Douglas Biagi,
   Michael Miller, Schallus

```
ROBERT P. MERENICH
GEMMEL, TODD & MERENICH, P.A.
767 SHORE ROAD
P.O. BOX 296
LINWOOD, NJ 08221
```

    On behalf of James Donaldson, Joseph Bonsall, Jay Woods, Jason Rzemyk, Dave Druding, Steven Swankoski, Tim Colella

**HILLMAN**, District Judge

This case involves allegations of constitutional and state law violations by defendant police officers in connection with the execution of a "no-knock" search warrant executed at night upon plaintiffs at their home. Presently before the Court are the following motions: a) Motion to seal confidential materials and for summary judgment by defendants Ventnor City, Theordore Bergman, Michael Miller, and Jason Rzemyk ("Ventnor defendants")[1]; b) Motion for summary judgment by defendants Joseph Bonsall, Tim Colella, James Donaldson, Dave Druding, Steven Swankoski, and Jay Woods (Egg Harbor Township police department officers who are members of the Atlantic County Emergency Response Team ("ACERT")); c) Motion for sanctions against the Ventnor defendant by plaintiffs Lisa Cress and Daniel Lombardi; and d) Cross-motion for sanctions by the

---

[1] It appears from the docket that the Ventnor defendants' counsel also entered his appearance on behalf of defendant "Schallus, Ventnor City Police Officer," and answered the complaint on his behalf, but it does not appear that counsel moved for summary judgment on his behalf. It also does not appear that the first name of this officer has ever been identified. The parties are directed to advise the Court on the status of plaintiffs' claims against this defendant.

2

Ventnor defendants.  For the reasons expressed below, the parties' motions will be granted in part and denied in part.

## BACKGROUND

According to plaintiffs[2], on March 15, 2008, at approximately 10:00 p.m., Lisa Cress ("Cress"), Daniel Lombardi ("Lombardi"), eleven-year-old C.C., and twelve-year-old K.C., were asleep in their home when they were awakened by the defendants' execution of a no-knock search warrant.  During the course of the entry and apprehension of Lombardi, the target of the warrant, plaintiffs claim that defendants: (1) used flash sound diversionary devices (NFDs); (2) shattered glass; (3) stormed their home with masks and carrying assault rifles; (4) struck Cress in the forehead with a metal object, trampled over her, and dragged her down the stairs; (5) apprehended Lombardi by throwing him into a glass table, beating and kicking him, and rubbing his face and head into broken glass; and (6) kept the traumatized children separated from their parents for 90 minutes.  Plaintiffs contend that this conduct, among other alleged actions of defendants, constitutes excessive force in violation of their Fourth Amendment rights, and violates various state laws.

In addition to the claims based on the execution of the search warrant, plaintiffs claim that the search warrant itself was

---

[2] We have written in this case before and recite now only certain background facts and those necessary for the resolution of the pending motions.

invalid because it was not based on probable cause.  According to the search warrant affidavit, probable cause was based on a drug investigation that used two confidential informants.  The search warrant affidavit claims that CI-1 purchased drugs from Lombardi on two occasions, and that CI-1 and CI-2 provided information that Lombardi was currently in possession of a firearm.  Plaintiffs contend that the purported drug buys were fabricated, and the use of confidential informants was fabricated.

During the course of discovery in this case, plaintiffs requested that the identities of the two confidential informants be revealed.  After briefing and oral argument, the Court granted plaintiffs' request, and permitted plaintiffs' counsel to take the depositions of the two CIs.  The Court also ordered that the names of the CIs would remain under seal, and that the transcripts of the depositions would be redacted, until the Court subsequently addressed the continued propriety of keeping the identities of the CIs protected.

Presently before the Court are the motions by the two groups of defendants for summary judgment in their favor on all of plaintiffs' claims against them.  Also pending are cross-motions for sanctions by plaintiffs and the Ventnor defendants.  On November 15, 2012, oral argument was held on these motions, and the following analysis supplements the Court's rulings made on the record.

4

**DISCUSSION**

    **A.**   **Jurisdiction**

Jurisdiction is proper pursuant to federal question jurisdiction, 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3)(4), and 42 U.S.C. § 1983. Plaintiffs further invoke the pendent and supplemental jurisdiction of this Court to hear and decide claims arising under state law pursuant to 28 U.S.C. § 1367.

    **B.**   **Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

    **C.**   **Analysis**

        **1.**   *Sanctions motions*

The two CIs testified in their depositions that they did not provide the information about Lombardi that served as the basis for the search warrant. CI-2 testified that she did not act as a confidential informant for any police department regarding Lombardi, and she never informed any police officer in December

5

2007 that Lombardi was in possession of a handgun.[3] CI-1 testified that he never worked as a confidential informant for the Ventnor City Police Department, he never purchased drugs from Lombardi, and he never observed Lombardi with any weapons.[4]

In support of their motion for summary judgment, the Ventnor defendants argue that CI-1 was untruthful in his deposition, his testimony should be disregarded, and that the search warrant was properly supported by probable cause - i.e., CI-1's information regarding Lombardi and CI-1's participation in controlled drug buys with Lombardi.[5] In addition to that argument, the Ventnor defendants presented a purported third confidential informant - as "Exhibit U" - to further support the validity of probable cause and the entry of summary judgment in their favor.[6] The Ventnor

---

[3] CI-2 testified that on several occasions she served as a confidential informant for certain police departments on matters unrelated to Lombardi. Whether her identity will be revealed in this case is discussed below.

[4] Whether the identity of CI-1 will be revealed is discussed below.

[5] It is somewhat ironic that the Ventnor defendants found CI-1 credible enough to serve as a basis for the probable cause to support a no-knock search warrant, but they deem him not credible when he has disputed his involvement as a confidential informant.

[6] Exhibit U is the report of a private investigator who interviewed Margate City police officer Christopher Koch. According to the Ventnor defendants, Koch, who was dismissed by plaintiffs as a defendant in this case, provided information regarding Lombardi to the Ventnor City police department, specifically defendant Bergman, prior to the issuance of the warrant. This information was purportedly supplied to Koch by

6

defendants' presentation of this third confidential informant resulted in plaintiffs seeking sanctions against the Ventnor defendants in the form of criminal contempt, civil contempt, and Rule 11 sanctions.

As the Court expressed on the record, plaintiffs' motion for sanctions will be denied without prejudice. Although there appears to be a disturbing set of facts regarding the issuance of the no-knock search warrant, and the defendants have not been able to present a consistent, coherent story on how the information that served the basis for the search warrant was obtained, including an 11th-hour presentation of a third source who has since disclaimed that he made any statements regarding Lombardi to the police,[7] the Court will not impose any sanctions against defendants at this

---

CI-2 and the third information source. Exhibit U contains Koch's statement to the investigator regarding the information CI-3 gave him. According to the report, CI-3 told Koch that he saw a gun in Lombardi's home, and Koch then relayed this information to Bergman.

Prior to dismissing him as a defendant, plaintiffs did not take Koch's deposition. After plaintiffs filed their motion for sanctions with regard to Exhibit U, the Ventnor defendants attempted to secure an affidavit from Koch. Having been unsuccessful in their efforts to obtain an affidavit from Koch, the Ventnor defendants asked the Court for leave to take the deposition of Koch prior to the Court's consideration of their motion for summary judgment. Plaintiffs opposed that request, and reiterated at the November 15, 2012 hearing that they did not wish to take Koch's deposition. Because discovery is closed, and for a myriad of other considerations expressed on the record, the Court denied defendants' request to depose Koch.

[7] As with the other two informants, whether the identity of this third informant will be revealed is discussed below.

time. The information contained in Exhibit U, although not provided until June 2011, was nonetheless disclosed to plaintiffs prior to the end of discovery.[8] Moreover, even though the typical sanction imposed in similar matters is the exclusion of the offending evidence at trial, plaintiffs, understandably so, do not seek such a sanction in this case.[9]

Thus, the Court will not impose any sanctions against the Ventnor defendants now, but will not foreclose plaintiffs from obtaining sanctions in the future should other sanctionable conduct come to light.

### 2. *Defendants' summary judgment motions*

The Court held on the record that the Ventnor defendants'

---

[8] When questioned at the November 15, 2012 hearing, counsel for the Ventnor defendants did not know when his firm or co-counsel obtained "Exhibit U."

[9] Plaintiffs seek sanctions pursuant to Federal Civil Procedure Rule 11 arguing that the Ventnor defendants' filing of their summary judgment motion was frivolous and in violation of Local Civil Rule 56.1, which requires the moving parties to set forth a separate statement of undisputed material facts. The Court does not find that the filing of the motion for summary judgment warrants sanctions because at this stage of the case it appears to be proper litigation strategy. The Court, however, admonishes the defendants that compliance with the Local Rules is mandatory, and that even though the Court will deny their motion for summary judgment on a substantive basis, the Court may also deny it for their failure to provide their L. Civ. R. 56.1 statement. See L. Civ. R. 56.1(a) ("On motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion. A motion for summary judgment unaccompanied by a statement of material facts not in dispute shall be dismissed. . . .").

motion for summary judgment was denied.  Issues of disputed material fact abound with regard to plaintiffs' claims against the Ventnor defendants arising from their obtaining and executing the no-knock search warrant.  Accordingly, plaintiffs' claims against the Ventnor defendants must be submitted to a jury.[10]

---

[10] The qualified immunity analysis provides the basis to determine whether a claim for a constitutional violation by a law enforcement officer is viable.  The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In order to determine whether a government official is entitled to qualified immunity, two questions are to be asked: (1) has the Plaintiff alleged or shown a violation of a constitutional right, and (2) is the right at issue "clearly established" at the time of the Defendant's alleged misconduct? Pearson v. Callahan, 129 S. Ct. 808, 816 (2009).

With regard to plaintiff's excessive force claim, in determining whether excessive force was used, the Fourth Amendment's "objective reasonableness" test is applied. Sharrar v. Felsing, 128 F.3d 810, 820-21 (3d Cir. 1997) (citing Graham v. Connor, 490 U.S. 386, 396 (1989)).  The objective reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (relying on Graham, 490 U.S. at 396; Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995)).  "Other relevant factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Id.

Even though the determination of whether an officer acted objectively reasonably or made a reasonable mistake of law, and is thus entitled to qualified immunity, is a question of law that is properly answered by the court, not a jury, the Third Circuit has recognized that a judge could decide the objective reasonableness issue once all the historical facts are no longer

9

In contrast, as the Court stated at the hearing, whether summary judgment is appropriate as to the Egg Harbor defendants is a separate question. The Egg Harbor individual defendants (members of ACERT who planned and conducted the no-knock search) incorporate the Ventnor defendants' arguments in support of the validity of the no-knock warrant. Should summary judgment be denied on that issue, the Egg Harbor defendants contend that they are entitled to qualified immunity[11] because they had no involvement in the investigation led by the Ventnor police that was the basis for the warrant - i.e., they reasonably believed they were assisting with the execution of a facially valid warrant. They also argue that their actual execution of the warrant was reasonable.[12] The Egg

---

in dispute. Curley v. Klem, 499 F.3d 199, 211, 211 n.12 (3d Cir. 2007). To do this, "[a] judge may use special jury interrogatories, for instance, to permit the jury to resolve the disputed facts upon which the court can then determine, as a matter of law, the ultimate question of qualified immunity." Id. In other words, "[w]hen the ultimate question of the objective reasonableness of an officer's behavior involves tightly intertwined issues of fact and law, it may be permissible to utilize a jury in an advisory capacity, . . . but responsibility for answering that ultimate question remains with the court." Id. The Court will follow this path.

[11] See, supra, note 10.

[12] The Egg Harbor defendants also contend that judgment should be entered in their favor on plaintiffs' state law claims for assault and battery, intentional and negligent infliction of emotional distress, false imprisonment, trespass, and punitive damages. Because disputed material facts exist with regard to the actions of the ACERT officers, the determination as to whether these defendants are liable to plaintiffs on these claims must be left for a jury to decide. See N.J.S.A. 59:3-3 ("A public employee is not liable if he acts in good faith in the

Harbor defendants further argue that plaintiffs do not make any substantiated allegations against the ACERT officers individually, instead lumping them all together. Except for not contesting that the Egg Harbor defendants reasonably believed that they were proceeding pursuant to a valid search warrant, plaintiffs have opposed all of the Egg Harbor defendants' other arguments.[13]

After a careful examination of the record, the Court finds that material issues of disputed fact exist as to the Egg Harbor defendants' conduct as it relates to the execution of the search warrant, particularly as to the apprehension of Lombardi and the

---

execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment."); Hill v. Algor, 85 F. Supp. 2d 391, 411 (D.N.J. 2000) ("The 'objective reasonableness' standard that is used to determine whether a defendant enjoys qualified immunity from actions brought pursuant to 42 U.S.C. § 1983 is used to determine questions of good faith arising under N.J.S.A. 59:3-3.").

Conversely, plaintiffs have not demonstrated facts to support their state law claim for slander against the Egg Harbor defendants. See W.J.A. v. D.A., 43 A.3d 1148, 1153 (N.J. 2012) ("[A] statement is defamatory if it is false, communicated to a third person, and tends to lower the subject's reputation in the estimation of the community or to deter third persons from associating with him." (citation omitted)). Consequently, judgment shall be entered in these defendants' favor on this claim.

[13] Plaintiffs opposed the Egg Harbor defendants' motion in substance, but they also contend that it should be denied because the Egg Harbor defendants failed to comply with Local Civil Rule 56.1 by simply reciting deposition testimony and not specifying what facts are undisputed. Because the Court will deny the bulk of defendants' motion, whether they complied with L. Civ. R. 56.1 is immaterial. The Court, however, admonishes the Egg Harbor defendants, just as it did the Ventnor defendants, that strict compliance with L. Civ. R. 56.1 is mandatory.

stairway injury sustained by Cress.  Even though plaintiffs cannot specify which defendant inflicted what harm, which plaintiffs explain is due to the nature of defendants' conduct and the fact they were all dressed in black with masks, plaintiffs' testimony of the events paired with each defendant's testimony of his own actions provides sufficient specificity for the jury to (1) determine each officer's actions,[14] and (2) assess the credibility

---

[14] Egg Harbor defendant, John Woods, did not participate in the actual execution of the search warrant and he did not enter plaintiffs' home until after the completion of the operation. Instead, Woods was the team commander who devised the operation plan, assigned the ACERT members' duties, and directed practice runs.  Plaintiffs claim that the operation plan was excessive from its inception based on the minor nature of the offense allegedly committed by Lombardi and because there was no real or perceived risk that Lombardi was dangerous.

In order to hold Woods personally liable under § 1983, plaintiffs "must show that he participated in violating their rights, or that he directed others to violate them, or that he, as the person in charge of the raid, had knowledge of and acquiesced in his subordinates' violations." Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).  The Court finds that even though Woods did not personally use excessive force, there are sufficient disputes of material fact concerning what was known and relied upon in developing the plan so as to preclude summary judgment as to Woods at this time.  However, it is likely that a separate special interrogatory question or questions regarding the planning of the operation may be necessary to insure that Woods's claim of qualified immunity is viewed through the lens of facts applicable to his conduct and not others.  For example, a jury might conclude that the warrant was obtained without probable cause, that the officers did not have reason to fear Lombardi, and the use of force was unreasonable.  On the other hand, they could reach the opposite conclusion on any, or all, of those factual disputes.  A proper set of interrogatories in this case should assess each stage of the operation and the relative role of each defendant to insure the proper application of the qualified immunity doctrine. See id. at 1193; cf. Santiago v. Warminster Twp., 629 F.3d 121, 133 (3d Cir. 2010) ("Where, as here, an operation results in the use of allegedly

12

of each party's testimony. After the jury resolves these relevant factual disputes through the use of special interrogatories,[15] the Court will then be capable of deciding whether or not the law clearly permitted or prohibited the Egg Harbor defendants' conduct. Accordingly, the Egg Harbor defendants' motion for summary judgment will be denied on those issues.[16]

---

excessive force against only one of several people, that use of force does not, by itself, give rise to a plausible claim for supervisory liability against those who planned the operation. To hold otherwise would allow a plaintiff to pursue a supervisory liability claim anytime a planned operation resulted in excessive force, merely by describing the force used and appending the phrase 'and the Chief told them to do it.'").

[15] See, supra, note 10.

[16] Judgment must be entered in the Egg Harbor defendants' favor as it relates to the retention of the minor children. Plaintiffs claim that the two minor children were confined in their bedrooms and separated from their mother, Cress, for 90 minutes, which plaintiffs claim violates the Constitution. Plaintiffs do not refute the Egg Harbor defendants' evidence, however, that the entire ACERT operation took ten to fifteen minutes, and all of the ACERT officers left the house after the operation. Even though the children may have been detained in their bedroom for 90 minutes by the Ventnor defendants, no evidence establishes that they were held for that amount of time by any of the Egg Harbor defendants. Thus, even if the separation of the children from their mother for 90 minutes constitutes a violation of law under these circumstances, the Egg Harbor defendants are entitled to summary judgment on that claim. See, e.g., Baker v. Monroe Twp., 50 F.3d 1186, 1192 (3d Cir. 1995) ("[T]here is no per se rule about the length of time a suspect may be detained before the detention becomes a full-scale arrest. Instead, the court must examine the reasonableness of the detention, particularly whether the police were diligent in accomplishing the purpose of the stop as rapidly as possible."(citation omitted)).

### 3. *Whether the identities of the confidential informants should be unsealed*

Previously, after balancing the interests articulated in Cashen v. Spann, 334 A.2d 8, 15 (N.J. 1975), cert. denied, 423 U.S. 829 (1975), the Court determined that the identities of CI-1 and CI-2 should be revealed to plaintiffs' counsel so that they could take the depositions of the two informants, and that plaintiffs could use the content of those depositions to support their claims. The Court also held that their identities should remain under seal, and their names and any other identifying information should be redacted. (See Docket Entries 110 and 167.) The Court reserved decision on the issue of whether and how the identities of CI-1 and CI-2 should be revealed at trial.

At this stage in the case, there are two main issues concerning the identities of the confidential informants. The first issue concerns whether CI-1 or CI-2 - and more recently CI-3 - are actually confidential informants entitled to protection. The second issue is how to proceed at trial should the informants' identities remain protected.

To answer the first question, Cashan advises that in evaluating "the likelihood that the evidence about or testimony by the informant will be necessary to plaintiffs' case," a court "should consider the risk of possible prejudice to pending or future prosecutions as well as the danger that the informant may be exposed to physical harm, harassment, or other untoward

14

consequences." Cashen, 334 A.2d at 16.  In this case, all three "confidential informants" have disclaimed that they actually served as confidential informants with regard to Lombardi.  If these statements were undisputed by all parties, these individuals would not be entitled to, or require for their protection, the anonymity provided by the informer's privilege.  That is not the case here, however.

Whether to reveal the identities of these three witnesses is complicated by several considerations: (1) the Ventnor defendants have provided a "confidential informant advisement form" signed by CI-1 (Ex. G to Mot. Summary Judgment);[17] (2) CI-2 testified that she has served as a confidential informant for other towns in other matters (Ex. 8 to Pl.'s Opp. to Ventnor Def.'s S.M.J.); and (3) CI-3 states in an affidavit provided to plaintiffs' counsel that he never worked as a confidential informant for the Margate Police Department, but it is unknown whether he has served as a confidential informant for any other police department (Docket No. 173).

Because the Court does not wish for any of these three individuals to be "exposed to physical harm, harassment, or other untoward consequences" as the result of revealing their identities at this time, and to assess their own views on this subject, the

---

[17] The agreement does not contain any provision regarding if or when the confidential informant's identity would be revealed.

15

Court will conduct a sealed Rule 104 hearing at which the informants will be produced for examination by the parties and the Court. Thereafter the parties will articulate a basis, supported by case law and other authorities, for whether the three purported confidential informants' identities should remain under seal, and if so, how the parties propose handling their confidential identities during trial.

## CONCLUSION

Based on the foregoing:

(1) the case will proceed to trial on plaintiffs' constitutional and state law claims against all defendants, except plaintiffs' claims against the Egg Harbor defendants relating to the securing of the search warrant, the confinement of the minor children, and for slander;

(2) no sanctions will be imposed at this time;

(3) the deposition of Christopher Koch will not be permitted;

(4) the parties shall inform the Court about the status of defendant "Schallus, Ventnor City Police Officer";

(5) the Court will set this matter down for a Rule 104 hearing with testimony from the alleged informants to be taken under seal; and

(6) the parties shall thereafter separately brief the Court as to the propriety of continuing the protection of the identities of

the three purported confidential informants.

    An appropriate Order will be entered.


Date: December 20, 2012          s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

17